Good morning. May it please the Court, Joe Seguenza, Petitioner. In this Consolidated Immigration Appeal, the issues are whether substantial evidence supports the Board's finding affirming an IJ decision that Petitioner did not establish either past persecution or well-founded fear in the denial of their asylum withholding CAT claims. Second issue is whether Petitioner in the opening brief sufficiently challenged the Board's findings affirming the IJ on the merits. And thirdly, whether the Board abused its discretion in denying a motion to reopen based on change of country conditions, specifically the December 2006 coup in Fiji. With respect to the first issue, Petitioner submits that the IJ's findings were erroneous in denying the asylum withholding CAT claims in that Petitioner credibly testified as to several events that happened to her and her family and her sister-in-law while they were living in Fiji, including the beating of Petitioner's husband by Native Fijians, the burning of the family home by authorities with no assistance. And the way the aboriginal Fijians treat the Indo-Fijians is monstrous, and it's been that way for many, many years. I don't see a whole lot of change from that military, the bloodless coup. But we have numerous decisions of the Ninth Circuit saying it doesn't rise to the level of persecution. It's harassment and discrimination. And what's worse here? I mean, some of those, there's one of them where it's much worse than here. Understood, Your Honor. But also Petitioner submits that merely characterizing the specific harms that the Petitioners in this case suffered as mere harassment or discrimination doesn't do justice, if you will, to their claims. I kind of agree with you. All I can make out is that we sure have been tough on Indo-Fijians, but the precedents are there. Well, Your Honor, I think that the key piece of evidence at the hearing that the I.J. District apparently disregarded and the Board glossed over was the sexual attack on Petitioner's sister-in-law living on the same land and the same residence as Petitioner and her family. That would seem, and also the claim by the Petitioner that on several occasions, on a number of occasions, while washing clothes down at a nearby river, she was accosted and sexual attacked on her. So I think the key here is that claim specific harm to a family member who was living on the same land and the same residence, in the same residence as Petitioner, creates at least a well-founded fear of persecution of returning to Fiji and suffering the same fate as the sister-in-law. I think that's the key piece of evidence that the I.J. and the Board overlooked in this particular case. And it takes it over the, it carries it over the level of just mere discrimination and harassment. The Petitioner. As I recall, nothing has ever, no harm has ever come to Mrs. Nand. And Mr. Nand had his harm broken by native Fijians more than 20 years ago. And other than that, what they've got is general conditions and things that have happened to other people. Is that correct? Well, Your Honor, if we're looking at it in the motion to reopen context or with respect to the direct appeal from the asylum claims, yes, Petitioner, female Petitioner, does claim that she was accosted by native Fijians who threatened her with rape on a number of occasions, and her husband suffered actual physical harm. But they didn't do it, right? Pardon me? They didn't do it, right? No, they didn't do it. But I think, again, the key piece of evidence is the claim that Petitioner's sister-in-law in fact suffered a sexual attack on the same premises where Petitioner's family were living prior to the incident with the sister-in-law. I believe that's the case. On the motion to reopen, I didn't see anything there except the general conditions and the bloodless coup. On the motion to reopen, we would submit that the Board apparently only considered the 2006 coup in isolation and did not take into account the credible affidavit attached to the motion specifically stating that family members of Petitioner and Fiji have experienced robberies, personal threats on a daily basis, harassment, stonings of their houses, and larceny or destruction of agricultural crops. Those specific harms were set forth in the motion to reopen affidavit that the Board didn't even consider. Apparently they didn't even consider it because they didn't mention it in their motion, in the decision, rather. They only said that from the news articles, which apparently that's all they considered, there is some unrest, but the 2006 coup by itself doesn't justify reopening this case. We would submit that the Board is ignoring over 20 years of racial strife. Let me ask you this, and I'm going over the same ground in a way that Judge Kleinfeld has just gone over. I'm trying to figure out, first off, what's happened to the Petitioners themselves, because if something bad enough happened to them, then they get a presumption. Then I'm trying to figure out what happened to others, and as part of that, trying to figure out whether the others, the family members, can be, as it were, attributed to them because of family membership or whatever. What happened to the Petitioners themselves was a long time ago. We have, and I think I'm not trying to minimize the evidence that you've got, I'm trying to state it sympathetically to you, a beating and a breaking of either the hand or the arm of the husband, and threats of rape down while washing, including, I gather, grabbering around the waist, so there's some physical contact, but no actual rape. This happens, I think, in 1987. Correct. They come to this country as tourists in 1999. Correct. And they apply for asylum then after they've arrived here in this country. So they're applying for asylum more than ten years after the events that happened to them. They are, Your Honor, but as soon as they arrived in the United States, I believe the 2000 coup occurred, and presumably that provided the impetus to apply for asylum shortly thereafter. Right, and so the next step, then, is what happens to the relatives while they're in the United States. In 2000, sister-in-law is the victim of a sexual attack on the same premises that Petitioner and her family lived in. And she's raped, is that the name? Raped, and in front of her husband, who was bound and forced to watch the attack on his wife. Right, and he then dies of a heart attack within a month or two. Yes, which Petitioner, admittedly without hard proof, claimed that the death was in part related to stress and problems. Yeah, obviously a significant amount of, to say the word stress is almost to minimize it unduly, but I understand. So we have rape of the wife and then death of the husband while they're gone. Yes. Now, and I understand you're trying to say connect this tightly because it's on the same land. That's a little bit hard, though, because we have some argument, we have some law that says, well, if you're attacking people in the same family because they are family members, then it can be attributed. But I'm not sure that we can say we can attribute this for purposes of presumption to them merely because it happened in the same place and they were family members. It's certainly relevant to whether they have a well-founded fear. Yes. But I'm not sure it can be treated as if it were an attack on them, which then gives rise to a presumption in their favor. Is there anything that would allow me to make that last step, which would help your client a lot? Only, Your Honor, my understanding is that precedent establishes that harm to a family member similarly situated or in similar circumstances can be enough to establish past prosecution or the well-founded fear. That's my understanding of the precedent. Okay. Yeah. So then this is a boundary case. It's hard to fit it tightly into the... Granted. But we would submit that there is a well-founded fear here. It doesn't sound like the family is targeted. It sounds from what they say that basically the aboriginal Fijians hate the Indians, the Indo-Fijians, because they're not aboriginal and they're lighter skinned and they have more money, by and large. And it's no difference that the sister-in-law was on the land. It could have been I moved out of my apartment in Suva and after I moved out, the new tenant got raped. It would be the same thing. They say, well, they left the land with a brother and sister-in-law. Your Honor, my understanding of the record is that the sister-in-law and her husband were working a leasehold farm that petitioner's husband had given to them after they had left Fiji and came to the United States. I think that there's enough of a link there, frankly, in terms of evidence for the court to be able to find that there is past prosecution. Is there any evidence of targeting the family as opposed to just awful, everything ranging from harassment to pogroms against the Indo-Fijians? Other than I would submit that perhaps if one were to view these acts as, quote, criminal random acts of native Fijians, petitioner would submit that's the modus operandi, if you will, of native Fijians over the course of 20 years that Indo-Fijians have suffered at the hands of natives. And I would submit there's enough record evidence to be able to make that connection in terms of the past persecution here. If the court were to view this as a disfavored group analysis, my understanding of the law on that is that the past persecution has to be of an individual. Yes. But in terms of well-founded fear and in terms of the motion to reopen, petitioner seems to fit into the category of the disfavored group analysis that this court has issued opinions on. Kind of like Chinese Christians in Indonesia. Exactly. I think it's the Wakari and Sayel and Sinha cases that established that. So we would submit that a remand is in order if this court were to find that there is evidence of past persecution so that there can be fact-finding on any presumption of a well-founded fear in current country conditions. And independently of that, that a remand is in order based on the motion to reopen where a reliable affidavit that was ignored by the board in conjunction with background material would indicate that petitioners have a well-founded fear. Okay. Let's hear from the government. And you've saved a little time. Thank you. Good morning. May it please the court. My name is Hannah Farber on behalf of the Attorney General. On the basis of events that transpired in 1987, events that involved no physical harm to the lead petitioner and which took place eight years before petitioners came to the United States, lead petitioner filed an application. Are you talking about the broken arm? I'm talking about the home invasion in which lead petitioner suffered no physical harm. Her husband did, in fact, as you say, have a broken arm. But he was a derivative beneficiary. And the harm that is the basis for the asylum application must be personal to the asylum applicant. So, in fact, his broken arm doesn't really go to whether or not they suffered past persecution or she suffered. Why shouldn't the standard for Indo-Fijians be the same as it is for Chinese Christians in Indonesia? I assume that you're talking about the disfavored group analysis. Right. That's a different case. And I think that as far as determining a disfavored group, simply because the Court has found in one case that there is a disfavored group doesn't actually extend forward. It's a case-by-case basis. Well, of course. It's a different country on the other side of the planet. Right. But still, why isn't it materially similar? Well, I mean, if the Court looks at Wackery v. Holder, that was a 2009 case where the Oh, I'm sorry. Actually, that's pattern of practice. Never mind. I think in this case there hasn't been a disfavored group finding. There has been widespread discrimination and harassment, but not necessarily widespread and severe persecution that would give rise to a disfavored group finding. Ethnic tensions have existed, as you pointed out, since at least 1987 when the first coup took place. And to date, there hasn't been a disfavored group finding by this Court. And what would be necessary for a disfavored group finding, either by the BIA or by this Court? Well, in Sale v. Ashcroft, the Ninth Circuit held that an asylum applicant who is a member of a significantly disfavored group must demonstrate, and then it goes into the standard for that. Unfortunately, there actually are not clear guidelines for what constitutes a disfavored group. It is some combination of discrimination, harassment, and widespread persecution. And in this case, I would argue that it's undisputed that there is widespread discrimination and harassment. However, I'm not convinced that that harassment and discrimination rises to the level of being significantly disfavored, as would instances of more prevalent persecution in that group of individuals. Incidentally, I'm not quite clear here. The blue brief seems to be arguing the original asylum claim as well as the motion to reopen. Is the denial of asylum before us? It is. And actually, if I could just jump back to the disfavored group for one moment. I couldn't hear you. If I could jump back to the disfavored group for one moment, I'd also like to point out that Petitioner's Counsel never in fact raised the disfavored group line of case law in his brief. He cited certain cases for various propositions. Yeah, I know that's true. I think the first person that mentioned it is me. Okay. Yeah. So as a preliminary matter, he's failed to exhaust the issue. But of course, I'm willing to discuss it here. The merits of the underlying asylum determination are indeed in front of the Court. And Petitioners have not shown that the record evidence compels reversal of the agency's determination that Lead Petitioner did not suffer past persecution. The reason for that is that the harm that she experienced, and by harm I mean no physical harm, I mean intimidation by ethnic Fijians when she went to wash her clothing. This happened eight years before she left the country and came to the United States. Eight years? You maybe can correct me on the dates. This happened in 87. When did they come to this country? I thought it was 99. You're absolutely right. That's relating to the eight years before they left for Australia, where they did not file an asylum application based on the harm. Okay. And in fact, it was more than eight years before they came to the United States as visitors for pleasure. I'm not sure eight versus 12 in this circumstance makes a big difference. I want to make sure I have my hands on the dates. Okay. So the point being is that she remained in the country unharmed for a decade, at least, before coming to the United States. Well, now you're wrong. She remained in the country for eight years. She came to this country 12 years later, but she left for Australia after eight. But returned to Fiji before then. Oh, then she goes back. Oh, okay. I got it. But moreover, the harm that she experienced simply didn't rise to the level of past persecution. As I said already, no physical harm. The intimidation she experienced was harassment, which is not discrimination. And the unfulfilled threats are also simply harassment and not past persecution. Moving to her alleged well-founded fear, well, actually, I should jump back. So both of the petitioner's family, the husband and wife, stayed in Fiji for many years after the home invasion and the husband's broken arm and the threats to rape the wife. That's correct. And they remained unharmed. I would make two comments about the harm that's discussed to various relatives. I think I said already that the harm that is to be considered in the asylum application is that experienced by the asylum applicant herself. But it's also worth noting that a number of her relatives remain in Fiji today unharmed. The sister-in-law who experienced the sexual assault lives on a farm a mile and a half away from where petitioner's property was located. And there is no evidence in the record that she has continued to experience mistreatment or any such severe experience as she did in, I believe, it was 2000. It's also worth mentioning that 42% of the country is Indo-Fijian, at least that's according to the 2004 report. I believe the number is slightly smaller now. And petitioners haven't shown that the risk to them is countrywide or that they couldn't perhaps move to a location within Fiji where... I think the country reports suggest that it's countrywide, don't they? Yes, and it's... I mean what it looks like in the country reports to me is that the Indo-Fijians have a little bit of money and the aboriginal Fijians have less and that the aboriginal Fijians are constantly committing crimes against the Indo-Fijians that the government doesn't do anything about. Look, the ethnic tensions are longstanding and they continue to be unsettled. I'm simply... Is my description a fair reading of the country report? I believe it is. I would argue that, again, I don't know that conditions rise above discrimination and harassment to a level of widespread persecution and I'm also speculating that given that such a large population is Indo-Fijian it may be possible for petitioners to move to an area of a larger concentration of Indo-Fijians where... That's what I didn't notice in the country report actually. No, the country report does not say that. I'm simply suggesting that given that nearly half the population is Indo-Fijian there may be pockets that are safer than other pockets but that's admittedly speculative. So moving to her well-founded fear argument, petitioners failed to show a pattern or practice of persecution in Fiji. They simply haven't shown that the treatment of Indo-Fijians is systematic persecution in the way that this court has found it to be in other cases such as ethnic cleansing of Serbs in Bosnia or a law criminalizing homosexuality in Jamaica where there's targeted violence against gay men in that country. So I would argue that there is no pattern or practice of Indo-Fijians in Fiji and then that would require petitioners to show an individualized risk of harm to lead petitioner. And here it's simply not enough to show that there was a home invasion in 1987 where she experienced no physical injury and that she experienced some level of intimidation when she went to wash her clothing. That just does not give this court enough to find an individualized risk to lead petitioner when she returns that goes beyond the generalized violence and ethnic tensions. In their motion to reopen the evidence and I believe So basically the husband's broken arm doesn't matter because he's not the asylum petitioner That's right and nothing rising to the level of persecution happened to the wife That's exactly right who was the asylum seeker That's exactly right and unfortunately the 2006 coup really doesn't change the situation it didn't materially affect their asylum claim because it's evidence of ongoing ethnic tensions that existed prior to and after the coup and petitioners haven't presented any evidence showing how the coup individually affected lead petitioner's fear They've presented more evidence of generalized violence but haven't shown how ethnic tensions have changed in such a way as to establish a pattern of practice or how they have led to a greater individualized risk to lead petitioner So with that I will conclude by saying that nothing in the record compels reversal of the agency's conclusion that petitioners failed to establish asylum withholding of removal or cap protection and the board properly denied their motion therefore this court should deny the petition for review Okay, thank you Thank you You've saved some time Just two brief points if I may I believe the Sinha case establishes with respect to the disfavored group analysis that civil unrest by itself excuse me, civil unrest doesn't undercut necessarily one's claim of persecution based on incidents or harms specific to them The specific harm to the wife again was being accosted and intimidated by native Fijians and threats of rape and I believe that Kaiser v. Ashcroft has held that threats coupled with a will and ability to carry out that threat can constitute sufficient harm And I believe there is testimony in the record Your Honor, that petitioner has stated that she could not relocate to any other part of Fiji in fact she had to return there primarily because the racial tension that's existed for over 20 years is countrywide in Fiji So I believe the issue of relocation was addressed by testimony of the petitioner Thank you Thank both sides for your argument Nand v. Holders now submitted
judges: Hug, Kleinfeld, Fletcher